FINAL COPY
294 Ga. 429

S13A1898. ENTREKIN v. FRIEDMAN.

BLACKWELL, Justice.

When Jay Allen Kaminsky and Diana Rene Entrekin divorced in 2009, they agreed to a parenting plan by which they would share joint legal custody of their son, but Kaminsky alone would have physical custody of the child. The parenting plan also addressed the possibility that Kaminsky might not survive the minority of the child, expressing the "desire of the parents" that Toby Kaminsky Friedman — the paternal aunt of the child — have physical custody in the event Kaminsky died. That parenting plan was approved by the court and made a part of the final decree of divorce.

On June 13, 2013, Kaminsky died. In the days following his death, various members of his family — including Friedman — took custody of the child, and they refused to give the child over to Entrekin. On June 18, Entrekin filed a petition for a writ of habeas corpus, alleging that she was entitled to custody of the child. Around the same time, Friedman filed her own petition for custody of the child. Following a hearing, the trial court denied the petition for a writ of

habeas corpus, awarded temporary custody of the child to Friedman, and allowed supervised visitation with the child to Entrekin. From the denial of her petition for a writ of habeas corpus, Entrekin appeals, contending that the trial court erred in two respects. We, however, see no error, and so, we affirm the denial of the petition for a writ of habeas corpus.

1. With respect to her first claim of error, Entrekin points to OCGA § 19-9-24 (a), which provides that "[a] physical custodian shall not be allowed to maintain against the legal custodian any action for . . . change of child custody . . . so long as custody of the child is withheld from the legal custodian in violation of the custody order." Entrekin argues that she was entitled by operation of law to custody of the child upon the death of Kaminsky, and Friedman, therefore, could not properly be heard to seek custody of the child for herself for so long as she was among the persons withholding the child from Entrekin. We agree that Entrekin was entitled — at least presumptively — to custody of her child following the death of her former husband.[1] See OCGA §

---

[1] Friedman argues that the final decree of divorce and the parenting plan incorporated therein gave custody of the child to Friedman upon the death of Kaminsky. But the parenting plan only expressed the "desire" of the parents at the time of the divorce that Friedman have custody upon the death of Kaminsky. Such an expression cannot reasonably be understood to amount to a definitive and binding directive as to custody of the child upon the death of

2

19-9-2. But it does not follow that Friedman was barred from seeking custody for herself. By its plain terms, OCGA § 19-9-24 (a) applies only when custody of a child is withheld "in violation of [a] custody order." Here, the only existing "custody order" was the final decree of divorce, and it did not award physical custody of the child to Entrekin. Accordingly, Friedman was not withholding the child from Entrekin "in violation of [a] custody order," and Friedman was not, therefore, absolutely barred from pressing her own petition for custody of the child.

2. For her second claim of error, Entrekin contends that the trial court erred when it determined that Friedman had overcome the legal presumption that Entrekin should have custody of the child. As this Court has explained before,

the father. See School Dist. No. 69 of Maricopa County v. Altherr, 458 P2d 537, 544 (Ariz. App. 1969) ("[T]he word 'desire' is an expression of present purpose rather than a promise of future action." (citations omitted)), disapproved on other grounds, Bd. of Trustees of Marana Elementary School, Dist. No. 6 v. Wildermuth, 492 P2d 420, 422 (Ariz. App. 1972). And in any event, our law generally disfavors judicial provision for a change of custody upon the happening of some remote contingency without further judicial review at the time of the change, see Scott v. Scott, 276 Ga. 372, 375-377 (578 SE2d 876) (2003), insofar as "children are not immutable objects but living beings who mature and develop in unforeseeable directions, [and] the initial award of custody may not always remain the selection that promotes the best interests of the child." Id. at 373. See also Johnson v. Johnson, 290 Ga. 359, 360 (721 SE2d 92) (2012). Accordingly, we accept that custody of the child following the death of Kaminsky was not judicially determined by the final decree and the parenting plan incorporated therein, and Entrekin was, therefore, presumptively entitled to custody.

the presumption that a surviving parent is entitled to custody can be overcome by clear and convincing evidence that the surviving parent is unfit. See Columbus v. Gaines, 253 Ga. 518, 519 (322 SE2d 259) (1984); Wright v. Hanson, 248 Ga. 523, 524 (2) (283 SE2d 882) (1981); Miele v. Gregory, 248 Ga. 93, 93-95 (2) (281 SE2d 565) (1981); Peck v. Shierling, 222 Ga. 60, 61-63 (148 SE2d 491) (1966). Here, the trial court found that Entrekin was, in fact, "unfit to be the custodian of this child." This finding, we conclude, is adequately supported by evidence that Entrekin long had struggled with addictions to alcohol and prescription drugs, that she previously had been convicted of driving under the influence, that her driving under the influence had endangered multiple children, that she had violated the terms of her probation, that she recently had taken prescription pain medication but could not say definitively that she had disclosed to her physician that she was a recovering addict, that she had failed to seek relief from the provisions of the divorce decree that required supervision of her visitation with the child, and that she was unaware of the special needs of the child, notwithstanding that she had access to his school and medical records. This evidence amounts to clear and convincing evidence of a present unfitness to have custody of the child, and for that reason, the trial court

4

did not err when it denied the petition for a writ of habeas corpus.[2] See <u>Harris v. Snelgrove</u>, 290 Ga. 181, 183-184 (2) (718 SE2d 300) (2011); <u>White v. Bryan</u>, 236 Ga. 349 (223 SE2d 710) (1976).

<u>Judgment affirmed. All the Justices concur.</u>

Decided January 21, 2014.

Habeas corpus. Chatham Superior Court. Before Judge Freesemann.

<u>Adam P. Cerbone</u>, for appellant.

<u>Johnson, Kraeuter & Dunn, Kenneth P. Johnson, Robert S. Kraeuter</u>, for appellee.

---

[2] We note that Entrekin does not contend that Friedman is unfit to have custody.